# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

PATRICK and DEBORAH McCANN,

     *Plaintiffs,*               CASE NO. 11-CV-14804

v.                         DISTRICT JUDGE THOMAS L. LUDINGTON
                         MAGISTRATE JUDGE CHARLES BINDER

U.S. BANK, N.A., as Trustee for the Structured
Asset Securities Corporation, Series 2006-OWI,

     *Defendant.*
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT
(Doc. 3)

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's motion be

**GRANTED** and the case be dismissed in its entirety with prejudice.

## II.    REPORT

### A.    Introduction

This action was removed from the Midland County Circuit Court, State of Michigan, on

November 1, 2011. Plaintiffs' complaint alleges the following claims: (1) invalid assignments –

no proof of ownership of loan/authority to foreclose under Mich. Comp. Laws § 600.3204; (2)

breach of contract for a HAMP loan modification; (3) promissory estoppel; (4) intentional fraud;

(5) constructive fraud; (6) unjust enrichment; (7) violation of the Truth in Lending Act ("TILA")

under 15 U.S.C. § 1639, *et seq*.; (8) declaratory relief – foreclosure barred by unclean hands; (9)

breach of contract – implied duty of good faith and fair dealing; (10) violation of Michigan's

Brokers, Lenders, and Servicers Licensing Act under Mich. Comp. Laws § 445.1672; (11)

violation of the Fair Debt Collection Practices Act ("FDCPA") under 15 U.S.C. § 1692g; and (12)

violation of the Michigan Occupational Code ("MOC") under Mich. Comp. Laws § 339.918.[1]

(Doc. 1.) These claims all relate to the circumstances surrounding a mortgage loan, alleged

modifications thereto, and the published notice of foreclosure sale of Plaintiffs' home, which was

first published on July 13, 2011, notifying that the foreclosure sale would commence on October

25, 2011. (Doc. 1 at Ex. F.) Contemporaneously with the complaint, Plaintiffs filed for an *ex parte*

temporary restraining order ("TRO") to prevent the foreclosure sale from occurring on October

25, 2011. It appears that a Midland County Circuit Court judge granted the TRO and scheduled

a hearing on the motion for preliminary injunction for November 2, 2011. (Doc. 1 at Ex. A.)

Before the hearing was held, on November 1, 2011, Defendant removed the case to this Court

pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446. (Doc. 1 at 5.)

On November 14, 2011, Defendant filed the instant dispositve motion. (Doc. 3.) Plaintiffs

filed a response on February 27, 2012 (Doc. 6), and Defendant filed a reply on March 5, 2012.

(Doc. 9.) Having considered the documents submitted by the parties, the Court is satisfied that it

would not be assisted by oral argument on the motion. Therefore, in accordance with the local

rules, the motion is ready for report and recommendation. E.D. Mich. LR 7.1(f)(2).

###    B.    Factual Background

Plaintiffs' property is commonly known as 1784 S. Five Mile Road, Midland, Michigan (the

"property"). (Doc. 1 at 21.) Plaintiffs entered into the subject mortgage and related promissory note

on September 1, 2005, in which Ownit Mortgage Solutions, Inc., ("Ownit") was described as the

---

[1]Although Plaintiffs refer to this section as the Michigan Debt Collection Practices Act in their complaint, the citation is actually to Michigan's Occupational Code's collection practices sections. (Doc. 1 at 43.)

"Lender" and Mortgage Electronic Registration Systems, Inc., ("MERS") as the "mortgagee" and "nominee for Lender and Lender's successors and assigns." (Doc. 1 at Ex. A; Doc. 3 at Ex. 1.) The promissory note signed by Plaintiffs on the same day stated that Plaintiffs owed Lender (Ownit) $120,000.00 plus interest. (Doc. 3, Ex. 1 at 2.)

On July 12, 2006, MERS, "as nominee for Lender and Lender's assigns," assigned the mortgage to Defendant. (Doc. 3 at Ex. 2.) This assignment was recorded with the Midland County Register of Deeds on July 17, 2006. (*Id.*) Plaintiffs allege that this assignment was invalid because "MERS is not the true mortgagee and any valid Assignment would have to come from Ownit, and further . . . the person who executed the same was not an agent or employee of MERS, but merely an attorney from the foreclosing law firm of Trott & Trott." (Doc. 1 at 22.)

Plaintiffs contend that, in March 2010, they contacted America's Servicing Company ("ASC"), which was "holding itself out as Plaintiffs' morgagee and/or servicing agent" despite the fact that Ownit appeared to be the owner of the mortgage according to the register of deeds and Defendant was "holding itself out, pursuant to a bogus Assignment" as the owner of the mortgage. (Doc. 1 at 24.) In April 2010, ASC representatives advised Plaintiffs they needed to complete an application to modify their loan. Plaintiffs provided the requested documentation, and in May 2010, ASC representatives told Plaintiffs their loan would be permanently modified from a 7.875% rate to a 4.5% rate, which would decrease their monthly payment from $1,057.00 to $786.90. (Doc. 1 at 24.) Plaintiffs were instructed to make a payment of $689.00 in June 2010 and make monthly payments of $786.90 in July through November 2010. Plaintiffs were told that "as long as those payments were made on time, the loan would be permanently modified to $786.90 per month, based on an interest rate of 4.5%." (Doc. 1 at 24.)

In November 2010, however, ASC's agent, Robert Grant, "stopped calling the prior agreement a 'trial period,' and started calling it a 'forbearance plan,' which is a completely different kind of agreement." (Doc. 1 at 24.) In February 2011, ASC informed Plaintiffs that they were approved for a permanent loan modification with an interest rate of 6.5%, which would result in a monthly payment of $997.00. (Doc. 1 at 25.) The modification agreement also noted that a $5,000 arrearage accumulated during the "forbearance period" would be added back into the loan amount. (Doc. 1 at 25.)

Plaintiffs aver that "[i]n the meantime, Defendant must have known that the 1st Assignment was invalid because on June 16, 2011, yet another Assignment of Mortgage was prepared." (Doc. 1 at 26 (emphasis omitted).) On June 16, 2011, MERS, "as nominee for Ownit . . . its successors and assigns" assigned the mortgage to Defendant. (Doc. 3 at Ex. 3.) This assignment was recorded with the Midland County Register of Deeds on June 20, 2011. (*Id.*) Plaintiffs contend that this assignment was also invalid because "MERS is not the true mortgagee and any valid assignment would have to come directly from Ownit, which at this point had ceased to exist . . . and for the reason that the person who executed the same was not an agent or employee of MERS . . . but merely an employee of Wells Fargo Home Mortgage, which is a complete stranger to the transaction at issue." (Doc. 1 at 26-27 (emphasis omitted).) Plaintiffs further contend that the Wells Fargo employees who signed the second assignment were "known fraudulent robo-signers." (*Id.* at 27.)

Defendant commenced foreclosure proceedings on July 13, 2011, indicating that the property would be sold at auction on October 25, 2011. (Doc. 1 at 27.) As stated above, Plaintiffs' motion for TRO was apparently granted by the Midland County Circuit Court and a hearing on the

motion for preliminary injunction was set for November 2, 2011. (Doc. 1 at Ex. A.) Before the hearing was held, Defendant removed the case to this Court. (Doc. 1 at 5.)

Defendant's notice of removal indicated that "Plaintiffs currently are due on their mortgage loan for November 1, 2010. They have an unpaid balance in the amount of $119,845.24 [and] Defendant has made escrow advances in the amount of $478.36." (Doc. 1 at 6.) Defendant further contended that despite their default on the loan, Plaintiffs were seeking to block collection and "through judicial means . . . force a modification of their loan." (*Id.*)

### C.    Motion Standards

Defendant moves for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, or, in the alternative, for summary judgment pursuant to Rule 56(c). Most of the claims are analyzed under the motion to dismiss standards; however, the summary judgment standards are used for analyzing claims brought in Counts 1 and 2.

When deciding a motion to dismiss, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570 (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

A motion for summary judgment will be granted under Rule 56(c) where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts

presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### D. Analysis & Conclusions

### 1. Invalid Assignments & Invalid Foreclosure Claims

Defendant contends that Plaintiffs' mortgage was properly foreclosed and, thus, that the foreclosure by publication statute, Mich. Comp. Laws § 600.3204, was not violated. (Doc. 3 at 12-14.) In addition, Defendant argues that Plaintiffs lack standing to challenge the validity of the mortgage assignment. (Doc. 3 at 13.)

### a. The Assignment

I suggest that Defendant correctly asserts that Plaintiffs lack standing to challenge the validity of the assignment. In *Livonia Properties Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 Fed. App'x 97 (6th Cir. 2010), the Sixth Circuit held that "even if there were a flaw in the assignment, [the plaintiff] does not have standing to raise that flaw . . . [because] there is ample authority to support the proposition that 'a litigant who is not a party to an assignment

lacks standing to challenge that assignment.'" *Id.* at 102 (citations omitted); *accord Thomas v. Mortgage Elec. Reg. Sys., Inc. (MERS)*, No. 11-15670, 2012 WL 834688, at *5 (E.D. Mich. Mar. 13, 2012) ("Plaintiff, as a non-party, cannot collaterally attack the MERS/U.S. Bank assignment"); *Shumake v. Deutsche Bank Nat'l Trust Co.,*No. 1:11-cv-353, 2012 WL 366923 (W.D. Mich. Feb. 2, 2012) (holding that the plaintiff lacked standing to challenge an assignment from Chase to Deutsche Bank because his injury was not fairly traceable to the assignment and the assignment, standing alone, did not cause him any injury).

Even if Plaintiffs did have standing to challenge the assignments, I suggest that the result would be the same. As cited by Defendant, *Bakri v. Mortgage Elec. Reg. Sys. (MERS)*, No. 297962, 2011 WL 3476818, at *4 (Mich. App. Aug. 9, 2011), held that an assignment from MERS to New York Mellon was valid where the mortgage named MERS as nominee for the lender (and the lender's successors and assigns) because, as nominee, MERS had the power to assign the mortgage to New York Mellon.[2] Here, the mortgage also provided that MERS was "nominee for Lender and Lender's successors and assigns" and that MERS was the "mortgagee under this Security Instrument." (Doc. 3, Ex. 1 at 2, 4.) Therefore, I suggest that MERS possessed the authority to assign the mortgage to Defendant. This result is consistent with Michigan law holding that contractual rights can generally be assigned unless assignment is clearly restricted. *See Talton v. BAC Home Loans Serv. LP*, No. 11-14512, 2012 WL 855975, at *6 (E.D. Mich. Mar. 7, 2012) (citing *Burkhardt v. Bailey*, 680 N.W.2d 453, 462 (Mich. Ct. App. 2004)).

---

[2]I note, however, that the *Bakri* analysis regarding the foreclosure by advertisement statute is no longer viable. *See Residential Funding Co., LLC v. Saurman*, 490 Mich. 490, 490 (2011) (reversing court of appeal opinion relied upon in *Bakri*); *Bowden v. American Home Mortgage Servicing, Inc.*, No. 10-12972, 2012 WL 628543, at *7 (E.D. Mich. Feb. 27, 2012) ("*Saurman* and, by extension, *Bakri*, were reversed by the Michigan Supreme Court"); *Luster v. Mortgage Elec. Reg. Sys.* (*MERS*), No. 11-cv-14166, 2012 WL 124967 (E.D. Mich. Jan. 17, 2012) (Michigan Supreme Court's reversal in *Saurman* also "*sub silentio* reversed another Court of Appeals decision, *Bakri*").

Plaintiffs also contend that the assignments were invalid because they were not signed by authorized agents. As to the first assignment, Plaintiffs contend that person who executed the document was not an agent or employee of MERS, but rather an attorney from the Trott & Trott law firm. (Doc. 1 at 22.) As to the second assignment, Plaintiffs aver that the person who executed the document was not an agent or employee of MERS, but rather was an employee of Wells Fargo Home Mortgage; Plaintiffs also allege that the witnesses to the second assignment were "known fraudulent robo-signers." (Doc. 1 at 27.)

It is unclear which assignment Defendant relies on to assert its authority to foreclose. Defendant appears to rely on the first assignment in July 2006 (Doc. 3 at 13; Ex. 2); however, Defendant provides evidence that the persons executing both the first and second assignments had authority to do so on behalf of MERS pursuant to an agreement for signing authority and a corporate resolution relevant to the authority of the persons executing the 2006 and 2011 assignments, respectively. (Doc. 3 at Ex. 6, 7.) Plaintiffs have not come forward with any evidence refuting the authority of the persons executing the assignments. Therefore, I suggest that even if Plaintiffs had standing to challenge the assignments, summary judgment would still be appropriate. I further suggest that even if the witnesses to the assignment(s) were robo-signers, that allegation is of no legal consequence. *See Assasepa v. JP Morgan Chase Bank*, No. 1:11-cv-156, 2012 WL 88162, at *8 (S.D. Ohio Jan. 11, 2012) (bare allegation that robo-signers were used to sign documents was insufficient to state a claim of fraud); *accord Cerecedes v. U.S. Bankcorp.*, No. 11-219 CAS, 2011 WL 2711071, at *5 (C.D. Cal. July 11, 2011). As a result, I suggest that even if Plaintiffs had standing to challenge the validity of the assignments, the claim would fail.

    **b.**       **Defendant's Authority to Foreclose by Advertisement**

Since I suggest that the assignment to Defendant is unassailable by the Plaintiffs who lack standing or, in the alternative, that the assignment was proper, the question then becomes whether Defendant, as assignee, possessed the authority to foreclose by advertisement under the relevant Michigan statute. (Doc. 1; Doc. 6 at 9-15.)

I suggest that Defendant's authority to foreclose (whether by advertisement or judicial proceeding) is established first in the language of the mortgage. The instant mortgage granted MERS a right to exercise its interests, including the right to foreclose and sell the property. (Doc. 3, Ex. 1 at 4.) Michigan law also provides that once rights are assigned, the assignee stands in the same position as the assignor. *See Talton, supra*. I therefore suggest that once the assignment was made from MERS to Defendant, Defendant stood in the shoes of MERS and possessed all the rights and authority given to MERS, including the right to foreclose. (Doc. 3, Ex. 1 at 4.)

I further suggest that Defendant's authority to foreclose by advertisement is found in the relevant Michigan statute. At the time the foreclosure proceedings were commenced and the sale was scheduled (July through October of 2011), the statute provided:[3]

---

[3]Of the portions cited herein, only subsection (4) was modified effective December 22, 2011. Subsection (4) currently provides:

A party shall not commence proceedings under this chapter to foreclose a mortgage of property claimed as a principal residence . . . if 1 or more of the following apply:

(a) Notice has not been mailed to the mortgagor as required by section 3205a.

(b) After a notice is mailed to the mortgagor under section 3205a, the time for the mortgagor to request, either directly or through a housing counselor, a meeting with the person designated under section 3205a(1)(c) under section 3205b has not expired.

(c) Within 30 days after a notice is mailed to the mortgagor under section 3205a, the mortgagor has requested a meeting under section 3205b with the person designated under section 3205a(1)9c) and 90 days have not passed after the notice was mailed. This subdivision does not apply if the mortgagor has failed to provide documents as required under section 3205b(2).

(d) Documents have been requested under section 3205(b) and the time for producing the documents has not expired.

(e) The mortgagor has requested a meeting under section 3205b with the person designated under section 3205a(1)(c), the mortgagor has provided documents as required under section 3205b(2), and the person designated under section 3205a(1)(c) has not met or negotiated with the mortgagor under this chapter.

(f) The mortgagor and mortgagee have agreed to modify the mortgage loan and the mortgagor is not in default under the modified agreement.

(1) Subject to subsection (4), a party may foreclose a mortgage by advertisement if all of the following circumstances exist:

(a) A default in a condition of the mortgage has occurred, by which the power to sell became operative.

(b) An action or proceeding has not been instituted, at law, to recover the debt secured by the mortgage or any part of the mortgage...

(c) The mortgage containing the power of sale has been properly recorded.

(d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.

. . . .

(3) If the party foreclosing a mortgage by advertisement is not the original mortgagee, a record of chain of title shall exist prior to the date of sale under section 3216 evidencing the assignment of the mortgage to the party foreclosing the mortgage.

(4) A party shall not commence proceedings under this chapter to foreclose a mortgage of property described in section 3205a(1) if 1 or more of the following apply:

(a) Notice has not been mailed to the mortgagor as required by section 3205a.

(b) After a notice is mailed to the mortgagor under section 3205a, the time for a housing counselor to notify the person designated under section 3205a(1)(c) of a request by the mortgagor under section 3205b(1) has not expired.

(c) Within 14 days after a notice is mailed to the mortgagor under section 3205a, the mortgagor has requested a meeting under section 3205b with the person designated under section 3205a(1)(c) and 90 days have not passed after the notice was mailed.

(d) The mortgagor has requested a meeting under section 3205b with the person designated under section 3205a(1)(c), the mortgagor has provided documents if requested under section 3205b(2), and the person designated under section 3205a(1)(c) has not met or negotiated with the mortgagor under this chapter.

---

(g) Calculations under section 3205c(1) show that the mortgagor is eligible for a loan modification and foreclosure under this chapter is not allowed under section 3205c(7).

Mich. Comp. Laws § 600.3204(4) (effect. Dec. 22, 2011).

(e) The mortgagor and mortgagee have agreed to modify the mortgage loan and mortgagor is not in default under the modified agreement.

(f) Calculations under section 3205c(1) show that the mortgagor is eligible for a loan modification and foreclosure under this chapter is not allowed under section 3205c(7).

Mich. Comp. Laws § 600.3204.

"Mortgage holder" is defined as "the owner of the indebtedness or of an interest in the indebtedness that is secured by the mortgage." Mich. Comp. Laws § 600.3205(b).[4] "Mortgage servicer" is defined as "the servicing agent of the mortgage." Mich. Comp. Laws § 600.3205(c).[5]

As indicated above, subsection (1)(d) of section 3204 requires that the "party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage." Although a Michigan Court of Appeals decision held that MERS, as nominee for the lender, could not meet the requirements of Mich. Comp. Laws §600.3204 because it did not have any interest in the promissory note, *Residential Funding Co. LLC v. Saurman*, 807 N.W.2d 412 (Mich. Ct. App. 2011), the Michigan Supreme Court summarily reversed the decision in lieu of granting appeal. *Residential Funding Co., L.L.C. v. Saurman*, 805 N.W.2d 183 (Mich. 2011). The Michigan Supreme Court expressed its concurrence with the dissenting opinion in the Court of Appeals' decision and stated:

> We clarify, however that MERS' status as an "owner of an interest in the indebtedness" does not equate to an ownership interest in the note. Rather, as record-holder of the mortgage, MERS owned a security lien on the properties, the continued existence of which was contingent upon satisfaction of the indebtedness. This interest in the indebtedness – i.e., the ownership of legal title to a security lien whose existence is wholly contingent on the satisfaction of the indebtedness – authorized MERS to foreclose by advertisement under MCL 600.3204(1)(d).

---

[4]This definition was unchanged by the December 22, 2011, amendments.

[5]This definition was unchanged by the December 22, 2011, amendments.

> Furthermore, we add that the Court of Appeals' conclusion to the contrary is inconsistent with established legal principles governing Michigan's real property law, and specifically foreclosure by advertisement. "Under the settled law of this State, the mortgage and the note are to be construed together."

*Residential Funding*, 805 N.W.2d at 183 (citation omitted). Similarly, in the instant case, Defendant, as assignee, acquired all the rights and interests that MERS had under the mortgage. MERS was the "mortgagee" and the Lender Ownit's "nominee for Lender and Lender's assigns," but since MERS had no interest in the promissory note, Defendant acquired no interest in the promissory note. (Doc. 3 at Ex. 1.) If the interpretation given by the Michigan Court of Appeals in *Saurman* still governed, Plaintiffs may have had a viable claim. However, the Michigan Supreme Court has made clear that the absence of an interest in the promissory note will not otherwise divest a party with a record lien – i.e., a mortgage interest in the property – of the right to foreclose on that property by advertisement.

Here, the evidence shows that at the time of the sale, Defendant was the record holder of the mortgage[6] on Plaintiffs' property (Doc. 3 at Ex. 3) and, thus, was authorized to foreclose by advertisement. Mich. Comp. Laws § 600.3204(1)(d), (3); *Yunanova v. BAC Home Loans Servicing, LP*, No. 2:10-cv-14156, 2012 WL 441161, at *5 (E.D. Mich. Feb. 10, 2012) (dismissing claim under Mich. Comp. Laws § 600.3204 where MERS assigned mortgage to Wells Fargo and Wells Fargo commenced foreclosure).[7]

---

[6]To be the record holder of the mortgage, Defendant needed to record its mortgage interest before the scheduled date of sale, which it did. *See* Mich. Comp. Laws § 600.3204(3); *Kim v. JP Morgan Chase Bank*, ___ Mich. App. ___, 2012 WL 104463 (Jan. 12, 2012); (Doc. 3 at Ex. 2, 3).

[7]I note that this result is not undermined by Plaintiff's allegation that the Ownit "went out of business shortly after taking Plaintiff's hard earned money." (Doc. 1 at 25.) Defendant contends that although Ownit stopped doing business in Michigan in 2008, it continued to exist. (Doc. 9 at 2-3, n.2.) I suggest that Ownit's status is legally irrelevant to Defendant's authority to foreclose by advertisement. *See Talton*, 2012 WL 855975 at *9 (fact that promissory note holder ceased to exist prior to foreclosure was not relevant to MERS' authority to foreclose on the mortgage).

I therefore suggest that Defendant's motion for summary judgment should be granted as to these claims.

### 2.    Breach of Contract Claim

Defendant argues that Plaintiffs' breach of contract claim for a Home Affordable Modification Program ("HAMP") loan modification should be dismissed because no private cause of action exists under HAMP. HAMP is a series of Treasury Supplemental Directives that the Department of Treasury was authorized to issue under the foreclosure mitigation and loan modification portions of the Troubled Assets Relief Program ("TARP"), which, in turn, is part of the Emergency Economic Stabilization Act ("EESA"). 12 U.S.C. §§ 5211, 5219a, 5219b.[8]

In *Brown v. Bank of New York Mellon*, No. 1:10-cv-550, 2011 WL 206124 (W.D. Mich. Jan. 21, 2011), the court dismissed the plaintiff's "Breach of Contract (HAMP)" claim, noting that "[a]ll of the district courts that have considered the issue have held that homeowners do not have a private right of action under HAMP for denial of a loan modification." *Id.* at *2 (collecting cases). Thus, I suggest that Defendant is entitled to judgment on this claim.

As Defendant noted in its reply brief, Plaintiffs have conceded that there is no private cause of action under HAMP, and instead contend that they are "suing U.S. Bank for entering into a contract to modify the loan, and then breaching the contract, after a course of performance by the parties." (Doc. 6 at 15; Doc. 9 at 3.)

There is authority supporting the notion that breach of contract claims based on Trial Period Plan ("TPP") agreements should be allowed to proceed despite the fact that HAMP provides no private cause of action, but there is also authority to the contrary. *See Senter v. JP Morgan Chase Bank, NA*, 810 F. Supp. 2d 1339, 1353 (S.D. Fla. 2011) (collecting cases, including *Brown,*

---

[8]The directives are available at https://www.hmpadmin.com/portal/programs/docs/hamp_servicer.

*supra*).[9] In *Brown*, the plaintiff had responded to the defendant's motion for summary judgment in the same manner as the instant case: by alleging that her claim arose not from HAMP but rather from common law contractual principles. *See Brown*, at *2-3. The court noted, however, that the plaintiff's "argument does not track the allegations in her complaint" because the "only agreement Plaintiff alleges in Count III is the HAMP agreement." *Id.* at *3. Since the TPP agreement expressly stated that it was not a modification and thus "did not guarantee that Plaintiff's loan documents would be modified[,]" the court found that the plaintiff failed to state a claim for breach of contract. *Id.*

Similarly, in the instant case, Plaintiffs contend that "prior to the commencement of foreclosure proceedings, there was a valid, binding Contract between the parties, requiring Defendant to send a permanent HAMP modification package with interest at the rate of 4.5% and a monthly payment in the amount of $786.90, to Plaintiffs via overnight mail, at the conclusion of their 'trial period.'" (Doc. 1 at 31.) Plaintiffs contend that the modification contract with those terms should have been sent because they "performed their obligations under the Contract, including but not limited to completing and submitting all required forms, proofs and requested documentation to Defendants." (*Id.*) However, Plaintiffs do not allege that such an agreement or contract was ever actually executed.[10] I therefore suggest that Plaintiffs have failed to state a claim for breach of contract and that Defendant's motion could be granted on this ground alone.

---

[9]Other cases in the federal courts in Michigan include: *Bolone v. Wells Fargo Home Mort., Inc.*, No. 11-10663, 2012 WL 882894, at *4 (E.D. Mich. Mar. 14, 2012) (holding that HAMP did not preempt state-law breach of contract claim based on breach of TPP plan); *Darcy v. Citifinancial*, No. 10-cv-848, 2011 WL 3758805, at *5 (W.D. Mich. Aug. 25, 2011) (holding that HAMP did not preempt state-law breach of contract claim based on breach of TPP plan, finding language in written TPP plan ambiguous and thus denying summary judgment).

[10]According to Plaintiffs' averments, a permanent loan modification was made at the higher interest rate of 6.5% in February 2011. (Doc. 1 at 25.)

Furthermore, even if Plaintiffs' complaint could be read to state a claim for breach of contract, I suggest that Defendant's motion for summary judgment should be granted because of Plaintiffs' failure to come forward with any evidence that an agreement was actually reached or that a consummated contract actually existed. *See Anderson, supra.* Plaintiffs' complaint avers that "ASC representatives told Plaintiffs their loan would be permanently modified from a 7.875% to a 4.5%[,]" but several months later ASC's agent, Robert Grant, "stopped calling the prior agreement a 'trial period,' and started calling it a 'forbearance plan.'" (Doc. 1 at 24.) However, Plaintiffs have provided no documentation, deposition testimony, or affidavits to support these allegations. More importantly, Plaintiffs' responsive brief to Defendant's motion fails to provide any evidence in support of their claim that a TPP agreement, loan modification agreement, or any agreement whatsoever existed between Plaintiff and Defendant or Defendant's agent. When challenged by a motion for summary judgment, this failure to come forward with evidence supporting their claim is fatal. *See Anderson, supra.* I therefore suggest that Defendant's motion for summary judgment be granted on the HAMP or breach of contract claim.[11]

### 3. Claims of Promissory Estoppel, Intentional Fraud, and Constructive Fraud

Defendant contends that Plaintiffs' claims for promissory estoppel (Count 3) and for fraud (Counts 4 and 5) should be dismissed under the statute of frauds. Mich. Comp. Laws. § 566.132. Defendant further contends that Plaintiffs have not produced any agreement, or even alleged that one exists, that was signed by an authorized representative of Defendant agreeing to permanently modify their loan at 4.5%. (Doc. 1 at 24; Doc. 3 at 16; Doc. 9 at 11.)

---

[11]Plaintiffs did not assert any claims arising under Michigan's mortgage loan modification statute. Interestingly, at the time the foreclosure was commenced, July 13, 2011, through the time in which the property was scheduled to be sold, October 25, 2011, several loan modification provisions had been repealed and no other provisions took their place until December 22, 2011. Mich. Comp. Laws § 600.3205e (Mich. Comp. Laws § 600.3205a to 3205d were repealed two years after the effective date of the amendatory act that added the section, i.e., on July 5, 2011); Mich. Comp. Laws § 600.3204(4) (eff. December 22, 2011).

The statute of frauds provides, in pertinent part, that:

An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:

A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.

A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

Mich. Comp. Laws § 566.132(2)(b)-(c). Plaintiffs have not provided a document with an authorized signature that modified the loan or waived any of the mortgage's provisions. I therefore suggest that Defendant is entitled to judgment on the pleadings with regard to all three of these claims. *See Loeffler v. BAC Home Loans Servicing, L.P.*, No. 11-cv-13711, 2012 WL 666750 (E.D. Mich. Feb. 29, 2012) (citing *Crown Tech. Park v. D & N Bank, NSB*, 619 N.W.2d 66 (Mich. Ct. App. 2000) ("This language is unambiguous [and] plainly states that a party is precluded from bringing a claim – no matter its label – against a financial institution to enforce the terms of an oral promise to waive a loan provision.").

I further suggest that even if the statute of frauds did not preclude the claims, Plaintiffs' fraud claims should also be dismissed for failure to meet the special pleading requirements under Rule 9(b) of the Federal Rules of Civil Procedure. Under this rule, a plaintiff must: "(1) specify the statements that [they] contend [] were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 569-70 (6th Cir. 2008). Although Plaintiffs' complaint gives a loose time frame of between April and June of 2010, and also mentions November of 2010, it fails to identify the alleged speakers until the complaint states that a "representative of ASC [] identified

himself as Robert Grant" in June 2010. (Doc. 1 at 24.) Prior to the identification of Robert Grant, the complaint refers only to "representatives" of ASC or "ASC." (*Id.*) In addition, the complaint fails to indicate whether these alleged statements were made orally or in writing, where they were made or how the alleged statements were fraudulent. (Doc. 1 at 24.) Plaintiffs' passing reference to the fact that Robert Grant "stopped calling the prior agreement a 'trial period,' and started calling it a 'forbearance plan,' which is a completely different kind of agreement" is not sufficient to explain how the alleged statements were fraudulent. (Doc. 1 at 24.)

I therefore suggest that Rule 9(b) provides an alternative ground supporting the grant of Defendant's motion to dismiss Plaintiffs' fraud claims. *See Jarbo v. BAC Home Loan Servicing*, No. 10-12632, 2010 WL 5173825, at *11-12 (E.D. Mich. Dec. 15, 2010) (finding negligent, innocent, and fraudulent misrepresentation claims were barred by the statue of frauds because they were based on the plaintiff's attempt to enforce oral promises to waive a provision of a loan or modify repayment and alternatively; the plaintiff's complaint failed to allege specificity required under Rule 9(b) to state a claim for fraud where it alleged the defendants inflated various figures on the loan application).

### 4.    Unjust Enrichment Claim

Defendant argues that Plaintiffs' claim for unjust enrichment should be dismissed because it is barred by the parties' contract. I suggest that Defendant is correct. "In order to sustain a claim of unjust enrichment, plaintiff must establish (1) the receipt of a benefit by defendant from plaintiff and (2) an inequity resulting to  plaintiff because of the retention of the benefit by defendant." *Belle Isle Grill Corp. v. Detroit*, 666 N.W.2d 271, 280 (Mich. Ct. App. 2003). Once established, the court will imply a contract to avoid unjust enrichment. *Id.* "However, 'a contract will be implied only if there is no express contract covering the same subject matter,'" so where, as here,

there is "an express contract" such as "loan agreements," "[t]his alone would foreclose plaintiff's unjust enrichment claim." *Fodale v. Waste Mgmt. of Mich., Inc.*, 718 N.W.2d 827, 841 (Mich. Ct. App. 2006); *accord Soto v. Wells Fargo Bank, N.A.*, No. 11-14064, 21012 WL 113534, at *9 (E.D. Mich. Jan. 13, 2012). I therefore suggest that Defendant's motion to dismiss Plaintiffs' unjust enrichment claim should be granted.

### 5. TILA Violation Claim

Defendant contends that Plaintiffs' TILA claims should be dismissed as time barred since the instant loan originated in 2005. Plaintiffs' response does not address the TILA claim. (Doc. 6.) "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005); *accord Gray v. Nationstar Mort., LLC*, No. 10-14375, 2012 WL 359764, at *4 (6th Cir. Feb. 2, 2012) ("Plaintiffs do not address this provision in their response brief and thus the Court assumes they are abandoning this part of their claim."). I suggest that Defendant's motion could be granted on this ground alone.

Even if the merits are addressed, I suggest that the result would be the same. Under TILA, any private cause of action must be brought "within one year from the date of the occurrence of the violation" or "no later than three years after the date on which the violation occurs" when the action is "brought by the appropriate State attorney general[.]" 15 U.S.C. § 1640. The instant complaint was filed in the Midland County Circuit Court on October 24, 2011. (Doc. 1 at 5, 13.) Plaintiffs allege a violation of TILA based upon the "'practice of extending credit to consumers under mortgages . . . without regard to the consumers' repayment ability . . . .'" (Doc. 1 at 37 (citing 15 U.S.C. §1639(h).) Thus, Plaintiffs' claim is based upon the original mortgage loan and not upon the alleged subsequent loan modification issues. Consequently, I suggest that the relevant

date for purposes of TILA is the original mortgage loan date, i.e., September 1, 2005. (Doc. 3 at Ex. 1.) Using this date, Plaintiffs' action is clearly time barred as it falls outside the one (and even the three) year limitation periods. I therefore suggest that Defendant's motion to dismiss the TILA claim should be granted.

### 6. Claims for Declaratory Relief

Defendant argues that Plaintiffs' claims for declaratory relief, foreclosure barred by unclean hands, and implied duty of good faith and fair dealing should all be dismissed because they are not actionable under Michigan law.

"[D]eclaratory relief is a remedy [], not a claim." *Mettler Walloon, L.L.C. v. Melrose Twp.*, 761 N.W.2d 293, 317 (Mich. Ct. App. 2008) (citations omitted). Similarly, the doctrine of unclean hands is not a claim; rather the "clean-hands doctrine closes the doors of equity to one tainted with inequitableness or bad faith to the matter in which he or she seeks relief, regardless of the improper behavior of the defendant." *Richards v. Tibaldi*, 726 N.W.2d 770, 779 (Mich. Ct. App. 2006). I therefore suggest that neither Plaintiffs' reference to declaratory relief nor to unclean hands provide Plaintiffs with any meritorious claim and that Defendant's motion to dismiss should be granted as to these alleged claims.

In addition, Michigan law "does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing." *Fodale,* 718 N.W.2d at 841. I therefore suggest that Defendant's motion to dismiss should be granted on this ground as well.

### 7. Brokers, Lenders, and Servicers Licensing Act Claim

Defendant contends that Plaintiffs' claim under the Michigan Brokers, Lenders and Servicers Licensing Act ("MBLSLA") should be dismissed because Defendant is exempt from the Act. I suggest that Defendant is correct. Michigan law provides that the MBLSLA does not apply

to a "depository financial institution whether or not the depository financial institution is acting in the capacity of a trustee or fiduciary." Mich. Comp. Laws § 445.1675(a). In turn, a depository financial institution is defined as "a state or nationally chartered bank, a state or federally chartered savings and loan association, savings bank or credit union, or an entity of the federally chartered farm credit system." Mich. Comp. Laws § 445.1651a(f). Plaintiffs' complaint recognizes that Defendant is a "national banking association" and Defendant confirms that it is a "national bank chartered under the National Bank Act." (Doc. 1 at 21; Doc. 3 at 21.) Consequently, Defendant is exempt from any liability under the MBLSLA and I suggest that Defendant's motion to dismiss should be granted. *See also Soto,* 2012 WL 113534 at *4 (dismissing MBLSLA count because Wells Fargo is chartered under the National Bank Act and is therefore exempt).

### 8.      **Fair Debt Collection Practices Act Claim**

Defendant argues that Plaintiffs' claim under the FDCPA should be dismissed because Defendant is not a debt collector since it was attempting to collect its own debt. Defendant further contends that Plaintiffs' claim under the MOC should be dismissed because Defendant was not engaged in debt collection. Plaintiffs respond that Defendant failed to attach a copy of the promissory note to its motion; thus, it has not shown that it was collecting its own debt. (Doc. 6 at 19-20.) Defendant attached the relevant promissory note to its reply. (Doc. 9 at Ex. 5.)

Federal law provides that

"debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another . . . which was not in default at the time it was obtained by such person.

15 U.S.C. § 1692a(6). Thus, "a creditor is not a debt collector under the FDCPA . . . [n]or is the assignee of a debt that was not in default at the time it was assigned." *Joyner v. MERS*, 451 Fed.

App'x 505, 507 (6th Cir. 2011) (citations omitted).[12] Moreover, the enforcement of a security interest through a nonjudicial foreclosure is not collection of a debt for purposes of the FDCPA. *Montgomery v. Huntington Bank*, 346 F.3d 693, 700-01 (6th Cir. 2003). I therefore suggest that Defendant's motion to dismiss Plaintiffs' FDCPA claim should be granted.

As to the MOC claim, the MOC applies only to collection agencies. Michigan law provides that the term

> "collection agency" means a person directly or indirectly engaged in soliciting a claim for collection or collecting or attempting to collect a claim owed or due or asserted to be due another . . . . Collection agency does not include a person whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency such as, but not limited to, the following: (i) A regular employee when collecting amounts for 1 employer if all collection efforts are carried on in the name of the employer; (ii) A state or nationally chartered bank when collecting its own claims[.]

Mich. Comp. Laws § 339.901. Since Defendant is a nationally chartered bank attempting to collect its own claims, i.e., mortgage debt, I suggest that Defendant is expressly exempt from the purview of the MOC and that Defendant's motion to dismiss should be granted with regard to Plaintiffs' MOC claim.

### E.    Conclusion

For the reasons stated above, I suggest that Defendant's motion to dismiss or for summary judgment should be granted as to all claims and that the case should be dismissed with prejudice in its entirety.

---

[12]I note that at the time of the first assignment to Defendant, July 12, 2006, the mortgage loan was not in default. Although it is unclear exactly when Plaintiffs defaulted, Plaintiffs began making payments under the plan – whether it was a TPP, trial period, or forbearance plan – in June 2010 (Doc. 1 at 24), and the notice of removal indicated that Plaintiffs were "due on their mortgage loan for November 1, 2010." (Doc. 1 at 6.) Therefore, it appears that Plaintiffs were not in default until 2010, or at least several years after the assignment in July 2006.

## III.   REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.


s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗
CHARLES E. BINDER
United States Magistrate Judge

Dated: April 3, 2012


## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Adam Gantz and Matthew Boettcher, and served on District Judge Ludington in the traditional manner.

Date:  April 3, 2012                By     s/*Jean L. Broucek*
Case Manager to Magistrate Judge Binder