UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PATRICK MCCANN and
DEBORAH MCCANN,

                Plaintiffs,

                                                  Case Number 11-14804

v.                                             Honorable Thomas L. Ludington

US BANK, N.A., as Trustee for the Structured
Asset Securities Corporation, Series 2006-OW1,

                Defendant.

_____ /

## OPINION AND ORDER OVERRULING OBJECTIONS,
## ADOPTING MAGISTRATE'S REPORT AND RECOMMENDATION,
## AND GRANTING DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

This case concerns a pending mortgage foreclosure by advertisement on a private residence. The plaintiffs have defaulted on the loan, the defendant is in possession of the promissory note endorsed in blank, and the assignment from the original mortgagee to the defendant is recorded in the county land records. The parties' primary dispute is whether the defendant has the authority to foreclose on the property. The ancillary dispute is whether the statute of frauds bars the plaintiffs' claims of breach of contract, promissory estoppel, and fraud regarding an alleged oral agreement to modify the interest rate of the loan. For the reasons that follow, the Court answers both questions in the affirmative.

Plaintiffs Patrick and Deborah McCann commenced this case in state court, filing a twelve-count complaint against Defendant seeking to enjoin the foreclosure by advertisement of their residence, money damages, and attorney fees. Defendant US Bank, N.A., as Trustee for the Structured Asset Securities Corporation, Series 2006-OW1, removed the case to this court. In lieu of answering, Defendant moved to dismiss the complaint. ECF No. 3. Magistrate Judge

Charles Binder issued a report and recommendation on April 3, 2012, recommending that the Court grant the motion to dismiss.  ECF No. 11.  Plaintiffs timely filed objections to Judge Binder's report and recommendation on April 17, 2012.  ECF No. 11.  As detailed below, the Court will overrule Plaintiffs' objections, adopt Judge Binder's report and recommendation, and grant Defendant's motion to dismiss.

**I**

On September 1, 2005, Plaintiffs obtained a home loan from Ownit Mortgage Solutions, Inc., to purchase a residence located at 1784 South 5 Mile Road in Midland, Michigan.  The loan was for $120,000 with an annual interest rate of 7.875 percent.  In exchange for the loan, Plaintiffs executed two documents, a mortgage and promissory note.

The mortgage is attached to the complaint as exhibit A.  It identifies the borrowers, "Patrick H. McCann and Deborah L. McCann, husband and wife as joint tenants," as well as the lender, "Ownit Mortgage Solutions, Inc, a California corporation."  Compl. Ex. A.  The mortgage also identifies the mortgagee and lender's nominee, specifying: "MERS is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns.  MERS is the mortgagee under this Security Instrument."  *Id*.

The promissory note is also part of the record.  Def.'s Reply Br. Supp. Mot. to Dismiss Ex. 5 ("Def.'s Reply. Br.").  "In return for a loan that I have received," the note provides, "I promise to pay U.S. $120,000.00 (this amount is called "Principal"), to the order of the Lender. The Lender is Ownit Mortgage Solutions, Inc., a California corporation."  *Id*. at 1.  The note continues:  "I understand that the Lender may transfer this Note.  The Lender or anyone who

takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.' " *Id*. Mr. McCann endorsed the note; Mrs. McCann did not. *Id*. at 3. A representative of Ownit also endorsed the note, in blank.[1] *Id*. at 4.

In July 2006, MERS assigned the mortgage to Defendant. The assignment is attached to the complaint as exhibit B. In pertinent part, it provides:

> Know all men by these presents, that Mortgage Electronic Registration Systems, Inc. as nominee for Lender and Lender's successors and/or assigns, . . . for and in consideration of the sum of One Dollar ($1.00) and other valuable considerations, lawful money of the United States of America, to it paid by [Defendant] . . . does hereby sell, assign and transfer to [Defendant], all the right, title and interest of [MERS] in and to a certain real estate mortgage made by Patrick H. McCann and Deborah L. McCann, Husband and Wife as Joint Tenants, original mortgagor(s), to Mortgage Electronic Registration Systems, Inc., as nominee for Lender and Lender's successors and/or assigns, Mortgagee, dated September 1, 2005.

Compl. Ex. B. On July 17, 2006, the assignment was recorded in the Midland County land records.

Sometime later, Ownit went out of business. "As a result," the complaint asserts, "it is Plaintiffs' position that the mortgage at issue can *never* be foreclosed on, by *anyone*." Compl. ¶ 18 (emphasis in original).

In March 2010, Plaintiffs contacted their mortgage servicing agent, America's Servicing Company ("ASC"), and requested a modification of the terms of the mortgage. *Id*. ¶ 19. In May 2010, the complaint alleges, ASC told Plaintiffs "that their loan would be permanently modified from the fraudulently inflated rate of 7.875% to a more reasonable 4.5%, which would reduce

---

[1] Plaintiffs, it should be observed, raise an argument regarding the blank endorsement. They write: "From a quick glance at the Note, one can see that the endorsement is crossed out, which means that the Note never was assigned by Ownit or anyone else. Moreover, even if the endorsement to the Note were not crossed out, Defendant has never produced a copy of the Note that indicates to whom the Note was endorsed." Pls.' Objections 9, ECF No. 11. As detailed below, however, Plaintiffs' argument is contradicted by a cursory glance at the face of the note, as well as the law of negotiable instruments.

their payment from $1,057 per month to $786.90 per month.  A representative of ASC who identified himself as Robert Grant further informed Plaintiffs that all they had to do to ensure the permanent modification of their loan was to make a payment in June, 2010 of $689, followed by five monthly installments of $786.90 [i.e., through November 2010]."  *Id*. ¶ 22 (emphasis omitted).  In November 2010, the complaint further alleges, Mr. Grant "stopped calling the prior agreement a 'trial period,' and started calling it a 'forbearance plan,' which is a completely different kind of agreement."  *Id*. ¶ 24.

In February 2011, the complaint continues, ASC notified Plaintiffs that they had been approved for a permanent loan modification, reducing their interest rate from 7.875 percent to 6.5 percent, "and if that wasn't bad enough, the agreement showed that as a result of the forbearance period, there was now a $5,000 arrearage that did not exist prior to the forbearance period, which would be tacked onto to the back end of Plaintiff's loan."  Compl. ¶ 27.

In June 2011, a second assignment of mortgage from MERS to Defendant was executed and recorded in the land records of Midland County.  The following month, Defendant commenced foreclosure by advertisement proceedings.  *See id*. Ex. F.  The public auction was noticed for October 25, 2011.

On October 24, 2011, Plaintiffs filed suit against Defendant in the Midland County Circuit Court.  Plaintiffs requested a temporary restraining order preventing the foreclosure auction from proceeding.  Additionally, Plaintiffs' complaint contained the following twelve counts: (1) "invalid assignments — no proof of ownership of loan/authority to foreclose"; (2) "breach of contract"; (3) "promissory estoppel"; (4) "intentional fraud"; (5) "constructive fraud"; (6) "unjust enrichment"; (7) "Truth in Lending Act"; (8) "declaratory relief — foreclosure barred

by unclean hands"; (9) "breach of contract — implied duty of good faith and fair dealing"; (10) "Mortgage Brokers, Lenders, and Servicers Licensing Act"; (11) "Fair Debt Collection Practices Act"; and (12) "Fair Debt Collection Practices Act."  Plaintiffs requested an order enjoining the foreclosure, money damages, and attorney fees.

Defendant removed the case to this Court on November 1, 2011.  The case was referred to Judge Binder for general case management pursuant to 28 U.S.C. § 636(b).  On November 14, 2011, in lieu of answering Defendant filed a "motion to dismiss and/or for summary judgment" brought "under Fed. R. Civ. P. 12(b)(6) and/or 56(a)."  On April 3, 2012, Judge Binder issued a report recommending that the motion be granted and the complaint be dismissed.  Plaintiffs timely filed objections to the report.

## II

The district court will make a "de novo determination of those portions of the report . . . to which objection is made."  28 U.S.C. § 636(b)(1).  The Court is not obligated to review the portions of the report to which no objection was made.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985).

## III

## A

Plaintiffs first object to Judge Binder's recommendation that the Court dismiss count one. Titled "invalid assignments — no proof of ownership of loan/authority to foreclose," count one alleges that "the chain of title at the Register of Deeds makes it clear that it is Ownit, which no longer exists as a corporate entity, which would be the only person or entity with authority to foreclose."  Compl. ¶ 46.  It continues: "The Michigan Court of Appeals has held, in authority

that is fully binding upon this Court, that MERS is not a mortgagee, but merely a 'nominee' of

the mortgagee, and as a result, MERS has been barred under Michigan law from commencing

any further foreclosure proceedings in the State of Michigan since approximately April, 2011."

*Id*. ¶ 49.  (The Michigan Court of Appeals decision referenced in this paragraph of the complaint,

*Residential Funding Co. LLC v. Saurman*, 807 N.W.2d 412 (Mich. Ct. App. 2011),   was

summarily reversed by the Michigan Supreme Court less than a month after this case was filed.

*Saurman*, 805 N.W.2d 183 (Mich. 2011).)

      Judge Binder recommends that this count be dismissed because "Plaintiffs lack standing

to challenge the validity of the assignment. . . .  Even if Plaintiffs did have standing to challenge

the assignments, I suggest that the result would be the same."  Report & Recommendation 7–8

(citing *Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 F.

App'x 97, 102–03 (6th Cir. 2010); and *Bakri v. Mortgage Elec. Reg. Sys*., No. 297962, 2011 WL

3476818, at *4 (Mich. Ct. App. Aug. 9, 2011) (unpublished)).  Judge Binder elaborates:

> Although a Michigan Court of Appeals decision held that MERS, as nominee for
> the lender, could not meet the requirements of Mich. Comp. Laws §600.3204
> because it did not have any interest in the promissory note, the Michigan Supreme
> Court summarily reversed the decision in lieu of granting appeal. . . .  Here, the
> evidence shows that at the time of the sale, Defendant was the record holder of the
> mortgage on Plaintiffs' property and, thus, was authorized to foreclose by
> advertisement.

Report & Recommendation 12–13 (internal footnote and citations omitted) (citing *Saurman*, 807

N.W.2d 412 (Mich. Ct. App.), *rev'd* 805 N.W.2d 183 (Mich. 2011)).

      Plaintiffs make three principal objections to Judge Binder's recommendation regarding

count one.  None have merit.

First, Plaintiffs object that the report erred regarding their standing to challenge the assignment, writing that "case law holds that borrowers have standing to challenge void assignments and neither the original lender nor Mortgage Electronic Registration, Inc. validly assigned the note and the mortgage to Defendant."  Pls.' Objections 5.

Plaintiffs are correct that debtors have standing to challenge a void assignment.  *Livonia*, 399 F. App'x at 102 (citing 6A C.J.S. *Assignments* § 132 (2010)).  Plaintiffs are not correct, however, that the assignment from MERS to Defendant is void.  On the contrary, Defendant is in possession of the promissory note, which is endorsed in blank by MERS as nominee for the original lender.  *See Fortson v. Fed. Home Loan. Mortg*., 12–CV–10043, 2012 WL 1183692, at *3–6 (E.D. Mich. Apr. 9, 2012) (unpublished) (Steeh, J.).

To elaborate, both the Sixth Circuit and the Michigan Supreme Court hold that a debtor "may assert as a defense any matter which renders the assignment absolutely invalid or ineffective, or void," but otherwise, "a litigant who is not a party to an assignment lacks standing to challenge that assignment."  *Livonia*, 399 F. App'x at 102 (quoting 6A C.J.S. *Assignments* § 132 (2010)); *Bowles v. Oakman*, 225 N.W. 613, 614 (Mich. 1929) (holding that maker of a note lacks standing to attack the validity of a transfer of that note).  A debtor generally lacks standing to challenge an assignment, the district court explained in *Livonia*, because it is not a third-party beneficiary of the contract between the assignor and assignee:

> Borrower certainly has an interest in avoiding foreclosure.  But the validity of the assignments does not effect whether Borrower owes its obligations, but only to whom Borrower is obligated.  Although a debtor may assert certain defenses that render an assignment absolutely invalid (such as nonassignability of the right assigned), he generally may not assert any ground which may render the assignment voidable "because the only interest or right which an obligor of a claim has in the instrument of assignment is to insure him or herself that he or she will not have to pay the same claim twice."

*Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 717 F. Supp. 2d 724, 735–36 (E.D. Mich.) (quoting 6A C.J.S. Assignments § 132), *aff'd* 399 F. App'x 97 (6th Cir. 2010).   Affirming, the Sixth Circuit wrote that the debtor only had standing to assert defenses premised on a void assignment giving rise to a risk of having to pay the same debt twice:

> These defenses include nonassignability of the instrument, assignee's lack of title, and a prior revocation of the assignment, none of which are available in the current matter.  Obligors have standing to raise these claims because they cannot otherwise protect themselves from having to pay the same debt twice.  In this case, Livonia is not at risk of paying the debt twice, because Farmington has established that it holds the original note. . . .  Without a genuine claim that Farmington is not the rightful owner of the loan and that Livonia might therefore be subject to double liability on its debt, Livonia cannot credibly claim to have standing to challenge the First Assignment.

399 F. App'x at 102 (internal citations omitted).  Here, as in *Livonia*, Plaintiffs do not allege the nonassignability of the instrument, assignee's lack of title, or a prior revocation of the assignment.  Plaintiffs, moreover, are not at risk of paying the same debt twice.[2]  Plaintiffs lack standing to challenge to challenge the validity of the assignment.

Plaintiffs' second objection is that "*Saurman* does not hold that MERS has the blanket authority to assign any and all interests in real property.  *Saurman* opinion is not applicable here as it only concerns MERS's ability to foreclose as the foreclosing party.  *Saurman* does not discuss MERS's ability to assign an interest to a third party."  *Id*. at 6.

Plaintiffs are correct that *Saurman* does not hold that MERS has "blanket authority" to assign interests in real property.  Rather, MERS has the specific authority created by the mortgage to act as the mortgagee and the original lender's nominee.  Consequently, MERS has

---

[2] Indeed, Plaintiffs do not contend that they are or that they face two entities threatening foreclosure. Rather, as Ownit is now defunct, "it is Plaintiffs' position that the mortgage at issue can *never* be foreclosed on, by *anyone*."  Compl. ¶ 18 (emphasis in original).

statutory authority to enforce a mortgage granted to it as nominee for the lender, including assigning the mortgage. *Luster v. MERS*, No. 11-CV-14166, 2012 WL 124967, *3 (E.D. Mich. Jan. 17, 2012) ("The Michigan Supreme Court . . . determined that MERS does have statutory authority to enforce a mortgage granted to it as nominee for the lender. Therefore, neither *Bakri* nor *Saurman* provides any legal basis for Plaintiffs to challenge MERS' assignment of the mortgage to [a third-party] or [the third-party's] foreclosure of the mortgage.") (Rosen, C.J.), *cited in* Def.'s Resp. to Pls.' Objections 7, ECF No. 12; *see also Fortson*, 2012 WL 1183692, at *4 ("A mortgage assignment by MERS and eventual foreclosure sale by the assignee is consistent with the foreclosure by advertisement statute.").

Finally, Plaintiffs object that "even if MERS somehow had the authority to assign the Note to Defendant, there is still the issue of whether Defendant, as an asset-backed security or mortgage-backed security, actually owned the Note and the Mortgage." *Id.* at 8. Plaintiffs write:

> Plaintiffs respectfully believe that the Report erred in finding that Defendant had the authority to foreclose because the Note was not a "blank endorsement," as Defendant contends. From a quick glance at the Note, one can see that the endorsement is crossed out, which means that the Note never was assigned by Ownit or anyone else. Moreover, even if the endorsement to the Note were not crossed out, Defendant has never produced a copy of the Note that indicates to whom the Note was endorsed. Based on these facts (and, again, a full development of the facts through the discovery process would be necessary), Defendant never was assigned the Note and, consequently, the Mortgage and therefore could not have had the authority to foreclose.

Pls.' Objections 9 (internal citations omitted).

Plaintiffs' argument is contradicted by a cursory glance at the face of the note, as well as the law of negotiable instruments. As Defendant observes, "the endorsement was not crossed out. While there is a line partially bisecting the endorsement, that line is part of a larger scribble on the page indicating that after the endorsement the remainder of the page was left blank."

Def.'s Resp. 9.  Plaintiffs offer no authority for their argument that the scribble that spilled onto the blank endorsement renders that endorsement a nullity, and an independent review shows no such rule.

Likewise unpersuasive is Plaintiffs' argument that "Defendant has never produced a copy of the Note that indicates to whom the Note was endorsed.  Pls.' Objections 9.  A blank endorsement is not endorsed to an identified person.  Rather, as noted, "When endorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone." Mich. Comp. Laws § 440.3205; *see, e.g.*, *Fortson*, 2012 WL 1183692, at *6 (E.D. Mich. Apr. 9, 2012; *Ensign v. Fogg*, 324; 143 N.W. 82 (Mich. 1913)).

In sum, because Plaintiff has defaulted on the loan, Defendant is in possession of the note endorsed in blank, and the assignment from the original mortgagee to Defendant is recorded in the land records, the Court will adopt Judge Binder's recommendation that count one of the complaint be dismissed.  Plaintiffs objections will be overruled.

**B**

Plaintiffs next object to the recommendation that count two be dismissed.  This count, titled "breach of contract," asserts that "prior to the commencement of foreclosure proceedings, there was a valid, binding Contract between the parties, requiring Defendant to send a permanent HAMP modification package with interest at the rate of 4.5%, and a monthly payment in the amount of $786.90."  Compl. ¶ 62.  It concludes, "Defendant has failed and/or refused to honor the terms of the contract."  *Id*. ¶ 64.

Judge Binder reports that "Plaintiffs have conceded that there is no private cause of action under HAMP, and instead contend that they are suing U.S. Bank for entering into a

contract to modify the loan, and then breaching the contract, after a course of performance by the

parties." Report & Recommendation 14 (internal quotation marks omitted). Judge Binder

recommends that count two be dismissed because Plaintiffs do not allege that the contract was

properly executed:

> Plaintiffs contend that "prior to the commencement of foreclosure proceedings,
> there was a valid, binding Contract between the parties, requiring Defendant to
> send a permanent HAMP modification package with interest at the rate of 4.5%
> and a monthly payment in the amount of $786.90, to Plaintiffs via overnight mail,
> at the conclusion of their 'trial period.'" Plaintiffs contend that the modification
> contract with those terms should have been sent because they "performed their
> obligations under the Contract, including but not limited to completing and
> submitting all required forms, proofs and requested documentation to
> Defendants." However, Plaintiffs do not allege that such an agreement or contract
> was ever actually executed.

*Id*. at 15 (internal citations and footnote omitted) (quoting Compl. ¶ 62).

Plaintiffs object that "the Report erred in finding that Plaintiffs did not properly allege the

existence of a contract. Plaintiffs did so in Paragraph 62 of their Verified Complaint." Pls.'

Objections 12 (internal citation omitted).

Defendant responds that Judge Binder's recommendation should be adopted because

Plaintiffs allegations do not satisfy the statute of frauds — specifically, Plaintiffs "failed to

demonstrate the existence of a signed [HAMP trial period plan] agreement." Def.'s Resp. 11.

Defendant is correct.

In pertinent part, Michigan's statute of frauds establishes that loan modifications are not

enforceable unless memorialized in a writing signed with an authorized signature by the financial

institution:

> An action shall not be brought against a financial institution to enforce any of the
> following promises or commitments of the financial institution unless the promise
> or commitment is in writing and signed with an authorized signature by the
> financial institution . . . A promise or commitment to renew, extend, modify, or

permit a delay in repayment or performance of a loan, extension of credit, or other
financial accommodation.

Mich. Comp. Laws § 566.132(2)(b).   Here, drawing all reasonable inferences in favor of
Plaintiffs, they do not allege a written agreement.   On the contrary, they implicitly acknowledge
that their breach of contract claim is based on "oral promises."  Pls.' Objections 12.

As noted, Plaintiffs' objection relies on paragraph 62 of the complaint, which asserts: "As
more fully set forth in the Common Allegations . . . prior to the commencement of foreclosure
proceedings, there was a valid, binding Contract between the parties, requiring Defendant to send
a permanent HAMP modification package with interest at the rate of 4.5%."  Compl. ¶ 62.  The
"common allegations," in turn, demonstrate that there was not in fact a "valid, binding Contract
between the parties." *See id*. ¶¶ 19–28.

Specifically, paragraph 20 alleges that "representatives of ASC advised Plaintiffs that
they needed to complete an application to modify their loan." *Id*. ¶ 20.  Paragraph 21 alleges that
Plaintiffs did so.   Paragraphs 21 through 27 report what (allegedly) happened next:

A representative of ASC who identified himself as Robert Grant . . . informed
Plaintiffs that all they had to do to ensure the permanent modification of their loan
was to make a payment in June, 2010 of $689, followed by five monthly
installments of $786.90, and as long as those payments were made on time, the
loan would be permanently modified. . . .

In November, 2010, on the final month of the trial period which ASC promised
would lead to a permanent loan modification to 4.5% interest and a payment in
the amount of $786.90, they were informed by Robert Grant that he "needed more
information to finish up the loan modification," calling it "step two" in the
process.

It was at that point, for the first time, that Mr. Grant stopped calling the prior
agreement a "trial period," and started calling it a "forbearance plan," which is a
completely different kind of agreement.

In February, 2011, ASC informed Plaintiffs that they were in fact approved for a
permanent loan modification.

> Unfortunately, the modification was not what had been promised by ASC the prior year, as a means to induce Plaintiffs into the forbearance plan.
>
> Specifically, instead of a modification to 4.5%, the modification was only to 6.5%, and instead of a payment in the amount of $786.90, the payment would be $997, and as if that wasn't bad enough, the agreement showed that as a result of the forbearance period, there was now a $5,000 arrearage.

Compl. ¶¶ 23–27 (emphasis omitted).

Accepting these allegations as true, the complaint does not allege an enforceable loan modification to 4.5 percent was memorialized in writing signed with an authorized signature by Defendant.  Rather, the complaint alleges Mr. Grant told Plaintiffs that they needed to make five monthly payments and "called" this a trial period  (in contrast to the "approved" agreement, which "showed" a modification of 6.5 percent).

Moreover, in their objections to Judge Binder's report, Plaintiffs acknowledge that "they are challenging the validity of a foreclosure  based on . . . the alleged oral promises to modify the loan." Pls.' Objections 12.  Plaintiffs thus implicitly acknowledge that the alleged promises were oral, not written.

As the purported modification does not satisfy the statute of frauds, the Court will adopt Judge Binder's recommendation that count two of the complaint be dismissed.  Plaintiffs' objections will be overruled.

## C

Plaintiffs next object to the recommendation regarding counts three through five of the complaint (promissory estoppel, intentional fraud, and constructive fraud), which Judge Binder also recommends be dismissed under the statute of frauds.  Report & Recommendation 16–17.

Plaintiffs object that the statute does not apply to "oral promises to modify the loan," explaining: "[T]he statute only bars parties from seeking to 'enforce' oral contracts and is therefore inapplicable to this case.  In other words, Plaintiffs are not seeking to 'enforce' the terms of an alleged oral promise to modify the loan.  On the contrary, they are challenging the validity of a foreclosure based on, and would never have occurred without, the alleged oral promises to modify the loan."  Pls.' Objections 12.

Plaintiffs' objection is unpersuasive.  As a general matter, under Michigan law "the doctrine of promissory estoppel may not be applied to a statute of frauds case involving the sale of real estate."  *Hazime v. Martin Oil of Ind., Inc.*, 792 F. Supp. 1067, 1069 (E.D. Mich. 1992) (Cohn, J.); *see also Tri-Mount/Preserves Bldg. Co., Inc. v. TCF Nat'l Bank*, No. 254077, 2005 WL 2445461, at *3 (Mich. Ct. App. Oct. 4, 2005) (unpublished) ("Plaintiffs have not cited any authority in support of their position that promissory estoppel can be applied to enforce an unwritten contract involving an interest in real property, in avoidance of the statute of frauds. . . . Further, it does not appear that Michigan law permits application of promissory estoppel in this context.").  The Sixth Circuit (applying Ohio law) explains that the statute of frauds, designed to bring certainty to enumerated types of transactions, precludes a promissory estoppel claim:

> Real estate transactions are usually formal undertakings involving significant sums of money.  Because they have the potential to affect the actions and interests of third parties, these transactions need to be made public.  The statute of frauds is thus necessary to ensure that transactions involving a transfer of realty interests are commemorated with sufficient solemnity.  A signed writing provides greater assurance that the parties and the public can reliably know when such a transactions occurs.  It supports the public policy favoring clarity in determining real estate interests and discourages indefinite or fraudulent claims about such interests.

*Seale v. Citizens Savings & Loans Assoc.*, 806 F.2d 99, 104 (6th Cir. 1986) (internal quotation marks omitted) (quoting *North Coast Cookies, Inc. v. Sweet Temptations, Inc.*, 476 N.E.2d 388 (Ohio Ct. App. 1984); *see also Indus. Maxifreight Servs., LLC v. Tenneco Auto. Operating Co., Inc.*, 182 F. Supp. 2d 630, 633 (W.D. Mich. 2002) (noting "the Court is of the firm conviction that Michigan courts would apply extra caution where the doctrine of promissory estoppel is invoked to circumvent the statute of frauds in the real estate context").

Moreover, as the Michigan Court of Appeals has pointedly observed, promissory estoppel is a judicially-created doctrine. Applying it to circumvent the statute of frauds would be "contrary to well-founded principles of statutory construction and is inconsistent with traditional notions of the separation of powers between the judicial and legislative branches of government." *Crown Tech. Park v. D & N Bank, FSB*, 619 N.W.2d 66, 71 n.4 (Mich. Ct. App. 2000) (citing Antonin Scalia, *A Matter of Interpretation: Federal Courts and the Law* 14–29 (1997)). That is, the judiciary is obliged to defer to the policy choices of the legislature:

> Promissory estoppel is a judicially created doctrine that was developed as an equitable remedy applicable in common-law contract actions. Unlike a traditional common-law contract claim or defense, the statute of frauds is legislatively mandated. Thus, such contracts must be reduced to writing. . . . The Michigan Legislature has determined that, for those contracts specifically identified in the statute of frauds, it is important to provide certainty and to avoid controversy over the terms of alleged contracts.

*Id*.

This logic applies with equal force to Plaintiffs' intentional and constructive fraud claims. In count four, Plaintiffs assert that "agents of Defendant have made very explicit promises, in no uncertain terms, that [Plaintiffs] would be granted a permanent modification under HAMP, with interest at 4.5% and a payment in the amount of $786.90." Compl. ¶ 74. This conduct was

intentionally fraudulent, Plaintiffs assert, because "Defendants knew that the representations were untrue at the time they were made, in that they had no intention of *ever* placing Plaintiffs into a permanent home loan modification under HAMP." *Id*. ¶ 79. Pleading in the alternative, Plaintiffs further allege that "Defendant made the representations set forth in Count 4 above without a purposeful design to defraud Plaintiffs. Nevertheless, the representations were false and induced Plaintiffs to participate in the transaction." *Id*. ¶¶ 86–87.

As noted, Michigan's statute of frauds establishes that to be enforceable loan modifications must be in writing and signed. Mich. Comp. Laws § 566.132(2)(b)  (quoted above). "This language is unambiguous. It plainly states that a party is precluded from bringing a claim — no matter its label — against a financial institution to enforce the terms of an oral promise to waive a loan provision." *Crown Tech*., 619 N.W.2d at 72; *Loeffler v. BAC Home Loans Servicing*, No. 11-cv-13711, 2012 WL 666750, at *5 (E.D.Mich. Feb. 29, 2012) (unpublished) ("Plaintiff's claims for misrepresentation and fraud are explicitly barred by Michigan's Statute of Frauds and will be dismissed."). As Judge Paul Borman recently observed, "Courts in this District have repeatedly held that misrepresentation claims based on alleged promises to modify home mortgages are barred by the Michigan Statute of Frauds." *Id*. (citing *Jarbo v. BAC Home Loan Servicing*, No. 10–12632, 2010 WL 5173825, *11 (E.D. Mich. Dec. 15, 2010) (unpublished) (Edmunds, J.); *Bingham v. Bank of Am.*, No. 10–11917, 2010 WL 3633925, *2–3 (E.D. Mich. Sept. 14, 2010) (unpublished) (Cox, J.); *Ajami v. IndyMac Mortg. Servs*., No. 09–13488, 2009 WL 3874680, *2 (E.D. Mich. Nov. 13, 2009) (unpublished) (Cohn, J.)).

Plaintiffs' claims for promissory estoppel, intentional fraud, and constructive fraud are barred by the statute of frauds. Accordingly, the Court will adopt Judge Binder's recommendation that counts three, four, and five be dismissed. Plaintiffs' objections will be overruled.

**D**

Finally, Plaintiffs object to the recommendation regarding counts eleven and twelve of the complaint. Count eleven asserts that "Defendant has engaged in multiple violations of the the Fair Debt Collection Practices Act against Plaintiffs." Compl. ¶ 114. Count twelve asserts a claim under the Michigan state counterpart. Judge Binder recommends that the Court dismiss these claims because Defendant is not a debt collector. Report and Recommendation 21. He notes that "a creditor is not a debt collector under the FDCPA . . . [n]or is the assignee of a debt that was not in default at the time it was assigned." *Id.* (quoting *Joyner v. MERS*, 451 F. App'x 505, 507 (6th Cir. 2011)).

Plaintiffs object that "because Ownit and MERS did not have the authority to assign the Note to Defendant for the reasons stated above, Defendant was not collecting on its own debt. Therefore, because Defendant was not collecting on its own debt, Defendant was acting as a debt collector within the meaning of the FDCPA and Michigan's statute." Pls.' Objection 14.

As detailed above, Plaintiffs are incorrect that "MERS did not have the authority to assign the Note to Defendant." Plaintiffs' objection will be overruled.

**IV**

Accordingly, it is **ORDERED** that Plaintiffs' objections to Judge Binder's report and recommendation (ECF No. 11) are **OVERRULED**.

-17-

It is further **ORDERED** that the Judge Binder's report and recommendation (ECF No. 10) is **ADOPTED**.

It is further **ORDERED** that Defendant's motion to dismiss (ECF No. 3) is **GRANTED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: May 25, 2012

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served
upon each attorney or party of record herein by electronic means or first
class U.S. mail on May 25, 2012.

s/Tracy A. Jacobs
TRACY A. JACOBS
